MARGARITA ROMERO WIDOW OF ORTIZ, Plaintiff and Appellant, *v.* COUTURE NATIONAL CAR RENTAL SYSTEM and FERNANDO LEÓN FLORES, Defendants and Appellees.

No. 12926.    Decided April 11, 1963.

*Rodolfo Aponte, Antonio José Amadeo,* and *Antonio José Amadeo, Jr.,* for appellant. The appellees did not appear.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

PER CURIAM: The Superior Court, San Juan Part, rendered judgment dismissing a complaint for damages, and an appeal was taken therefrom. The trial court made the following findings of fact:

"On November 17, 1956 at about 6:30 a.m., Angel Luis Ortiz Martínez, husband of plaintiff herein Margarita Romero, was driving a scooter along Ashford Avenue, in Condado, Santurce, Puerto Rico. In front of the scooter a passenger limousine belonging to the defendant, Couture National Car Rental System, was being driven at that time by codefendant Fernando León Flores.

"Said limousine was running at a moderate speed, about 15 miles per hour, and upon approaching the driveway of the Condado Hotel it gradually swerved to the left of the avenue in order to enter into said driveway. When almost half of the limousine had entered the driveway or entrance of the hotel, the scooter driven by plaintiff's husband collided against the rear part of the limousine with such violence that he was projected over defendant's vehicle, falling in the center of the road and dying as a result of the injuries suffered in the accident.

"The only witness presented by the plaintiff as to the manner in which the accident took place was Ramón Laureano Rosa. The testimony of Laureano Rosa did not establish a scintilla of evidence on which the court might have based a conclusion of negligence on the part of defendant's driver.

"Laureano Rosa testified that when the limousine was about to enter it reduced its speed; that it was running at a moderate speed; that the scooter was at a distance of two cars behind the limousine; that half of the limousine had entered into the driveway of the Condado Hotel when the collision took place;

that he could not see if the directional lights of the limousine were blinking or not."

As a question of law the court concluded that no negligence had been shown on the part of the defendants. Plaintiff submitted her case with the testimony of a single witness on the facts: Substantially he testified thus:

"A.—Well, when the accident took place I was sitting and looking in both directions and I saw a limousine or a Cadillac coming in. . . .

JUDGE:

How?

A.—A Cadillac, which we call limousine, because it takes a number of passengers, and then I could see it from the swimming pool which is before the Condado when the limousine was coming in.

Q.—Did it come from the direction of the swimming pool?

A.—Something like that, it passed by the swimming pool and then it began swerving towards the middle in order to turn towards the Condado because there is an entrance there, whether it is a car or a limousine it has to go out in order to enter and then the driver was coming in that direction and as it swerved out to enter there was a young man on a scooter behind the dark car, behind the limousine.

. . . . . . . .

Q.—In what direction was he coming, from your left or your right?

A.—On its right.

Q.—Your right, or the left-hand side?

A.—It was swerving out to the left.

Q.—Was it coming from the International Airport?

A.—It was coming from the airport.

. . . . . . . .

Q.—Was there traffic at that time?

A.—At that time there was no traffic because at that time there is never any traffic. I could only see the limousine and the scooter, very early.

Q.—At what speed, if you can tell, was the limousine traveling?

A.—At about 15 or 20, at about that distance not the mileage, you know. Something like that.

Q.—Could you tell the court if it was running at a rapid or moderate or slow speed?

A.—Moderate.

Q.—And you say that there was a scooter behind it?

A.—A scooter, brown or gray.

Q.—At what speed was the scooter running?

A.—The scooter was coming at about the same speed, about two cars behind the Cadillac or the car.

Q.—At a distance of about two cars?

A.—About two cars.

. . . . . . . .

Q.—Was the speed of the scooter the same or greater?

A.—It was the same.

Q.—A moment ago while you testified you mentioned that the limousine swerved towards what side?

A.—He swerved towards the middle, as if it were taking the left-hand side of the chauffeur.

Q.—You mean to say that the limousine swerved towards the left of the road on the center or how?

A.—It swerved towards the center taking quite some space on the other side, since it was a large car it has to swerve out in order to be able to take the driveway.

Q—The limousine then turned, in order to enter the hotel?

A.—Yes, it swerved out to enter the hotel.

Q.—While that limousine was moving in that maneuver which you are describing, was the scooter behind?

A.—Behind.

Q.—From where you were could you see whether the limousine's lights were working?

A.—I could not see it.

Q.—When you say that you could not see it do you mean that they were not working or that you could not see whether they were working?

A.—Well, when it turned, that it swerved out I did not see whether they were working but when it entered the driveway I did not see it.

94

JUDGE:

You did not what?

A.—I did not see the lights because I could not see the rear lights. Upon entering I could have seen them but I did not.

MR. APONTE:

Q.—You did not see whether they were blinking or did you see them?

A.—No, I did not see them blinking.

Q.—If they had been blinking, could you have seen them?

A.—Yes, even from the place where I was sitting.

Q.—I am not saying when it entered the carport, I am saying before that when you describe that the limousine was coming and it swerves a little towards the middle or the left?

A.—I did not see it.

Q.—At that moment, were they working or not?

A.—I could not see them.

Q.—Do you mean to say that they could have been working but that you did not see them?

A.—They could have been working or not.

Q.—Whether they were or not, you do not know?

A.—I do not know.

Q.—Is it possible that they could have been?

A.—It is possible.

Q.—You simply did not see that?

A.—I did not see it.

Q.—The maneuver which you describe the limousine performed upon entering was it a continuous maneuver or could you see whether the limousine applied the brakes or stopped or reduced its speed?

.    .    .    .    .    .    .    .

Q.—Did you see whether the limousine entered the driveway at the same rate of speed it was coming or did you see whether it reduced its speed upon performing the maneuver?

A.—Yes, it reduced the speed, it reduced it slightly.

.    .    .    .    .    .    .    .

Q.—How did it reduce the speed?

A.—At that moment it reduced the speed, do you know. At that moment there is not much traffic and it swerved out, and then it reduced the speed.

Q.—When the limousine turned to the right to enter the driveway of the Condado, before entering, did it stop?

A.—It stopped slightly.

Q.—Could you tell us whether the whole maneuver of turning, swerving out and entering was a continuous motion or was it done by steps?

A.—It was a motion slightly continuous.

Q.—Witness, how did the collision occur between the motorcycle and the limousine?

A.—When the limousine which was coming from that way entered and swerved out a little towards the left the motorman was coming behind.

Q.—Was the motorcycle coming from the side, through the middle, left or where?

A.—It was coming behind, on the same side as the limousine. Then as the limousine was about to enter the driveway it was coming behind and it tried to swerve out to the left.

Q.—Towards the left of the limousine?

A.—Towards the left of the rear part of the limousine and there it collided with the rear, that is, with the left fender, against the left fender but a little to the side about two fourths of the fender and there it was where he began turning the handlebar and he fell on his back over the iron wall that is there, with his feet towards Isla Verde and his head towards San Juan.

Q.—You had told us that the limousine was running on its right-hand side and then it swerved out?

A.—Yes sir, it swerved out.

Q.—The Vespa was coming, the scooter was coming on its right-hand side?

A.—On its right.

Q.—When the limousine swerved towards the left did the Vespa swerve with it, or did it go straight ahead or what did it do?

A.—The scooter . . . .

. . . . . . . .

MR. APONTE:

Q.—That is, when the Vespa swerved to the left it turned to the right towards the center?

A.—Yes, sir.

Q.—When the Vespa swerved towards the left, what did it have in front?

A.—The limousine was in front, the limousine crosswise ready to enter.

JUDGE:

Entering?

A.—Entering.

MR. APONTE:

Q.—Then, if I understand correctly, the limousine swerves and enters?

A.—It enters.

Q.—Is it then or after or is it before that the Vespa swerves towards the left, that is, where the limousine was when the scooter swerves to the left?

A.—As it enters.

. . . . . . . .

Q.—When the collision occurred you said that the boy jumped over and fell?

A.—Yes, along the side on the spot of the rear light.

Q.—Did it strike the rear part?

A.—Yes. Then it seems that when the handlebar struck the light on the rear fender he changed and fell on his back. Exactly like this.

. . . . . . . .

Q.—Could you see whether at the moment of the accident he had the window glasses up or down?

A.—They were closed.

Q.—How do you know?

A.—Those limousines are air-conditioned.

Q.—Did you see it.

A.—Yes, I saw it.

Q.—Then when the accident took place the limousine did not stop, it continued?

A.—It continued. It stopped at the carport.

Q.—How long were you there with the injured man?

A.—Well, I was there about fifteen or twelve minutes because after it entered the driveway it left some Americans there and then it went to pick him up . . . I was told that it picked the sick man up."

On cross-examination the witness stated:

"Q.—And the truth is that you presume that it has the windows closed, very logically because it is air-conditioned.

A.—I always testified that the window glasses were closed because I saw them closed.

Q.—Because it was air-conditioned?

A.—I saw them first.

Q.—Do you remember having seen them closed?

A.—Yes.

.        .        .        .        .        .        .        .

Q.—Then in other words, as you explained to the Judge when Mr. Aponte asked you, the limousine was traveling at a moderate speed?

A.—Fifteen miles, something like that. In a car you cannot tell when one is running.

Q.—It gradually swerved out to enter the Condado?

A.—Yes.

Q.—And half of the limousine had already entered when the accident occurred, is that correct?

A.—As I explained and as I want to explain, I was in front of the accident. When the limousine was coming and swerving to the left, then the collision took place.

Q.—You did not testify, if you remember, when asked on examination, you did not say half of the limousine?

A.—I remember having said it."

With the preceding evidence the trial court granted a motion for nonsuit and dismissed the complaint. At the request of plaintiff herself it subsequently set aside the judgment and continued the trial. The plaintiff did not bring additional evidence and the testimony of the vehicle's driver was received. This testimony coincides in many points with the preceding one, although the driver testified that he made the correspond-

ing signals with the light and with his hand and that the window glasses at that moment were down.

Even disregarding the most favorable testimony of the driver, in the light of the testimony of the only witness of the plaintiff, the judgment of the trial court should be affirmed. Appellant invokes the decision in *Brazee* v. *Wise*, 83 P.R.R. 174 (1961). The manner in which the accident in the *Wise* case happened—vehicles moving at the rate of 40 miles per hour in the rural zone, and the place where the impact took place between them—presents a situation clearly distinguishable from the case at bar as to the rule followed there.